# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DANIEL J. RISKIN, M.D., | § |
| | § No. 31, 2021 |
| Plaintiff Below, | § |
| Appellant, | § Court Below: Court of Chancery |
| | § of the State of Delaware |
| v. | § |
| | § C.A. No. 2019-0570 |
| BRENTON BURNS; MARY BETH | § |
| JENKINS; RAYMOND SCOTT; | § |
| JOHN STEPHEN WHITEHURST; | § |
| SCOTT HUEBNER; JOHN | § |
| KUZMISHIN; FRED SCHWARZER; | § |
| CRAIG GOMULKA; UNIVERSITY | § |
| OF PITTSBURGH MEDICAL | § |
| CENTER, a Pennsylvania | § |
| corporation; CHARTER LIFE | § |
| SCIENCES (OHIO) II, L.P., a | § |
| Delaware limited partnership; | § |
| CHARTER LIFE SCIENCES II, L.P., | § |
| a Delaware limited partnership; CLS | § |
| PARTNERS II (OHIO), LLC, a | § |
| Delaware limited liability company; | § |
| CLS PARTNERS II, L.P., a Delaware | § |
| limited partnership; and CLS | § |
| MANGEMENT II, LLC, a Delaware | § |
| limited liability company, | § |
| | § |
| Defendants Below, | § |
| Appellees. | § |

Submitted: January 29, 2021
Decided: February 18, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

**ORDER**

After consideration of the notice of appeal from an interlocutory order and the documents attached thereto, it appears to the Court that:

(1)     The appellant, Daniel J. Riskin, M.D. (the "plaintiff"), has petitioned this Court, pursuant to Supreme Court Rule 42, to accept an appeal from the Court of Chancery's memorandum opinion dated December 31, 2020.[1]  Specifically, the plaintiff seeks review of the portion of the opinion that dismissed a direct claim for breach of fiduciary duty relating to a corporate financing transaction.

(2)     The claim at issue involved a transaction in which Health Fidelity, Inc., a Delaware corporation of which the plaintiff is a common stockholder and co-founder, issued preferred stock to an alleged controlling stockholder at an unfair price (the "Series B Financing").  The plaintiff pleaded the claim both directly and derivatively, and the defendants moved to dismiss the direct claim.  The plaintiff argued that the claim could be asserted both derivatively and directly under *Gentile v. Rossette*[2] because the Series B Financing increased the controlling stockholder's

---

[1] *Riskin v. Burns*, 2020 WL 7973803 (Del. Ch. Dec. 31, 2020).
[2] 906 A.2d 91 (Del. 2006).  In *Gentile*, the Court wrote:
> There is, however, at least one transactional paradigm—a species of corporate overpayment claim—that Delaware case law recognizes as being both derivative and direct in character.  A breach of fiduciary duty claim having this dual character arises where: (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.  Because the means used to achieve that result is an overpayment (or "over-issuance") of shares to the controlling stockholder, the

2

economic stake and voting power and effected a corresponding decrease in the economic value and voting power of Health Fidelity's minority stockholders. The Court of Chancery held that the claim is derivative, and not direct, in nature. It therefore dismissed the count of the operative complaint that asserted the claim directly.[3]

(3) The plaintiff asked the Court of Chancery to certify an interlocutory appeal. The Court of Chancery denied the application for certification.[4] The court determined that, by dismissing the direct claim, the opinion decided a substantial issue of material importance.[5] The Court of Chancery determined that Supreme Court Rule 42(b)(iii)(B) supported the plaintiff's application because "the *Gentile*

---

corporation is harmed and has a claim to compel the restoration of the value of the overpayment. That claim, by definition, is derivative.

But, the public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder. For that reason, the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited. In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment—an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have.

*Id.* at 99-100 (footnotes omitted).

[3] *Riskin*, 2020 WL 7973803, at *12-14.

[4] *Riskin v. Burns*, 2021 WL 303999 (Del. Ch. Jan. 29, 2021).

[5] *Id.* at *1.

doctrine is in flux and . . . our law could benefit from clarity concerning its continuing vitality."[6] It also determined that interlocutory review would serve considerations of justice under Rule 42(b)(iii)(H), for similar reasons.[7] But the court concluded that the benefits of interlocutory review would not outweigh the costs because the court had determined that the plaintiff could pursue the claim concerning the Series B Financing derivatively and, thus, "[a]t most, a successful interlocutory appeal would add back overlapping direct claims for the same alleged breaches of fiduciary duties."[8] The court also observed that the case "is already proceeding piecemeal," the defendants' motions to dismiss are not fully resolved, and the nature of the case would make it "difficult to neatly tee up resolution of an issue related to an evolving area of law."[9]

(4)  We agree that interlocutory review is not warranted in this case. Applications for interlocutory review are addressed to the sound discretion of this Court.[10] In the exercise of its discretion and giving great weight to the trial court's view, this Court has concluded that the application for interlocutory review does not meet the strict standards for certification under Supreme Court Rule 42(b). Exceptional circumstances that would merit interlocutory review of the Court of

---

[6] *Id.*
[7] *Id.* at *2.
[8] *Id.*
[9] *Id.*
[10] DEL. SUPR. CT. R. 42(d)(v).

4

Chancery's decision do not exist in this case,[11] and the potential benefits of interlocutory review do not outweigh the inefficiency, disruption, and probable costs caused by an interlocutory appeal.[12]

NOW, THEREFORE, IT IS ORDERED that the interlocutory appeal is REFUSED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[11] *Id.* R. 42(b)(ii).
[12] *Id.* R. 42(b)(iii).